TOMLINSON VS. WALLACE.

The Statute of 1849, ch. 16, § 80, continued in the present revision, (ch. 19, § 85,) "that roads not recorded which should thereafter be used ten years or more, should be deemed public highways," is a statute of limitations, under which the

Tomlinson vs. Wallace.

owner of the land loses his right to compensation, if it has not been made, by acquiescence in the public user for the period prescribed, and is constitutional, and the same is true of chapt. 19, Laws of 1857.

In order to establish the limitation under the act of 1857, the record of the highway may be admitted in evidence, and it is not necessary to show that the survey followed the precise route named in the petition, that the proper notices were given of the meeting of the commissioners, or that they met pursuant thereto, nor that there was an appraisement of damages or compensation made to the land owner.

The act of 1857, though prospective in its operation, applies as well to highways laid out and recorded and opened and worked before its passage as after.

Under these statutes, notwithstanding informalities may have intervened in laying out the highway, it is proper for the court to submit the question of its legality to the jury, upon the record and evidence as to its having opened and worked.

Where a party, without making any objection, allows his adversary to introduce evidence establishing a defence not pleaded, and excepts to the charge of the court in relation thereto ; it cannot be assigned in this court for error that such charge is erroneous, but in order to be available as such, it should appear that all questions in relation to the admissability of such defence, were distinctly made at the time the jury were charged.

The proper method of raising questions as to the correctness of the charge of the court to the jury, is by asking specific instructions upon the points involved, or by specific exceptions to the instructions given. A general exception to a charge is not available.

APPEAL from the Circuit Court for *Rock* County.

Action to recover damages for trespasses committed by the defendant's cattle and horses upon the west half of the southeast quarter of section 18, town 3, range 12 east, in Rock county. Defense, general denial and that the cattle and horses entered from a legal highway on the west side of the said premises, and that cattle and horses were free commoners, by a by-law of the town; and that the land of the plaintiff was not fenced on the west side along said highway. Trial before the court and a jury. After the plaintiff had made out his case as charged in the complaint, the defendant testified, without any objection thereto on the part of the plaintiff, that he had a farm west of the plaintiff's premises, and that he had a gate that opened from his premises on the east side into the highway running between his farm and the plaintiff's lands, and that he had turned his cattle and horses

on to the plaintiff's lot, to drive them across it to a quarter section of land that he had rented of the plaintiff east of the premises in question, and that there was no way of getting on to the quarter section he rented of the plaintiff, except by crossing the premises in question, and that the fence between the defendant's farm and the lands described in the complaint was bad and was let down to drive the cattle through and was not put up again, that there had been a road travelled on the east side of his land for eight years, starting from the Madison road and running to the Magnolia road, and that work had been done on that road under the direction of the pathmaster, some two, and some three years before that time, and that he had worked on the road under the direction of the pathmaster and some of the work was done opposite to his land. Most of the travel was confined to a space of four rods in width, but sometimes men drove out on the prairie. J. Blount testified on behalf of the defendant that the road mentioned by the defendant, had been travelled for the past fourteen years, that it was in road beats and was fenced on both sides, at the ends of it, thirteen years ago, that he was town clerk of the town of Janesville, and that the petitions, certificates, orders and surveys in relation to it had been in his possession as such clerk for years, as a part of the records of said town. The defendant then offered in evidence a petition dated June 23, 1845, addressed to the commissioners of highways of the town of Janesville, purporting to be signed by eight residents and free-holders of said town, for the laying out and establishing of the road in question, which was filed in the clerk's office Sept. 6, 1845. The plaintiff objected to its being read in evidence, but the objection was over-ruled and the defendant excepted to the ruling. The defendant then offered in evidence the following original certificate: " We, the commissioners of highways of the town of Janesville, Rock county, W. T., do hereby certify that upon the application of six or more freeholders of said town, asking for

the laying out of a highway in said town, from the quarter section post on the north side of Sec. 18, in T. 3 N of R. 12 east, southerly to the south side of said township; we caused notices in writing to be posted up in three of the most public places of said town, specifying the commencement and route of the proposed highway, the several tracts of land through which the same was proposed to be laid, as far as known, and the time and place at which we would meet to make an examination and survey of said highway, which notices were posted up as aforesaid at least six days before said meeting, and three days or more before said meeting, required a copy of said notice to be served upon or left at the house of each resident upon the land proposed to be crossed by said road. And we do further certify, that being fully satisfied that the notices required by law have been given pursuant to statute; we, on this 14th day of July, 1845, it being the day specified in such notices, met at the hour and place appointed therein, examined the route of said proposed highway, heard all reasons offered for or against laying out the same, and caused a survey and description of said road to be made, which survey and description is in the words and figures following: Beginning at the quarter section post on the north side of section 18, in T. 3 N. of R. 12 E., and running thence south 2 miles, to the quarter section post on the south side of section 19, in the same town and range; thence south, (describing its further course), all in township and range before named. Said road is four rods in width. Var. of N. 8° E." Which was signed by two commissioners of Highways, and was filed in the town clerk's office March 14, 1846. To the reading of the certificate in evidence the plaintiff objected, but the court over-ruled the objection and received the same in evidence and the plaintiff excepted to the ruling. Another order or certificate of the same purport as the last, and filed for record in the town clerk's office at the same time, was offered and received in evidence, and the plaintiff made objection and excepted to the

ruling of the court, as in the case of the former one. The defendant then offered in evidence another petition for a highway over the same route, so far as the lands of the parties to this action are affected thereby, dated June 5th, 1847, and addressed to the commissioners of highways for said town, purporting to be signed by six persons, and also a certificate as follows: "We, the commissioners of highways of the town of Janesville, Rock Co., W. T., have this 14th day of June, 1847, laid out and established a public highway in said town, beginning, &c., (describing the route over the premises in question). This road is laid four rods wide, and now we, the commissioners aforesaid, in and for said town, do on the day and year first above written, order and direct the said road above described to be a public highway; and we do further order the same to be opened as such pursuant to the statute." (Signed by three commissioners of highways.) To the reading of said petition, as well as the said certificate in evidence, the plaintiff objected, and the court over-ruled the objections and received the same in evidence, to which the plaintiff excepted. The defendant then offered in evidence a survey of the said highway under the last named order, dated June, 14, 1847, and endorsed "Recorded on page 86, filed Dec. 2, 1847," to the reading of which in evidence the plaintiff objected, but the court over-ruled the objection and received it in evidence, to which ruling the plaintiff excepted. The defendant then offered in evidence the record book of the town of Janesville, into which the said petitions, certificates and surveys were copied and recorded, and to which the counsel for the plaintiff objected, but the court over-ruled the objection and received it in evidence, to which ruling the plaintiff excepted. Said petitions, certificates and surveys were then read in evidence from said record book. One witness called by the defendant testified that he had seen the road in question travelled about ten years; that it was travelled every year during that time; a bridge was built on it eight years ago, that he saw work done

on it and had worked on it himself. Another witness for the defendant testified that he did not know that the road in question was travelled along where the defendant lived, until four years ago, but that it had been travelled north of there eight or ten years. Another witness for the defendant, testified that he knew the road in question, and that it was there six or eight years ago and he had travelled it. Another witness for the defendant, testified that he had lived in Rock county for twenty years and knew the road in question and that there was a road travelled near there, when he first came into the country, that he thought it then went diagonally across the plaintiff's premises, and that there had been some travel there for twelve years and there had been work done on the road, that he never went directly south on the road, except when the diagonal road was bad. The witness, Blount being re called, testified that the bridge on the road in question was built ten years ago, that there was a by-law in the town of Janesville permitting cattle to run at large, passed at the town meeting, April 4, 1854, and that he posted up notices of this by-law in three of the most public places in the town, (naming them.) The south half of the road has been fenced out on each side, but not the north half, which includes the road opposite the defendant's house. The defendant then offered in evidence the following record. " Town of Janesville, Rock county, Wisconsin. At the annual town meeting of the qualified electors, held in the town of Janesville, April 4, 1854, the following by-law was adopted. " That cattle shall be free commoners from the first day of April to the first day of November." "Town clerks office, Janesville, April 6th, 1854, received for record and posted the same day according to the statute. Filed in town clerk's office. J. A. BLOUNT, Town Clerk."

After the defendant had rested his case, N. P. Bump, a witness on behalf of the plaintiff, testified that he was overseer of the highway about which testimony had been given, during the years 1859, 1860 and 1861, and that no work was done

thereon by any person by or under his direction, or to his knowledge.

The court charged the jury as follows : " There is some evidence as to the defendant's renting a tract of land of the plaintiff, on the east and adjoining the tract upon which it is alleged the tresspass was committed by the horses and cattle of the defendant. If you believe, from the evidence, that this was the fact, and that the defendant had no other way of getting from his residence to the ground rented by him, but by crossing the lot wherein the alleged trespass was committed, then he had a right to cross that lot back and forth with his horses, cattle and farming implements so as to cultivate the ground rented, and to harvest and take away the crops and let his stock eat fall feed. The law gave the right of passing and re-passing while the field was rented, because without a way to get to the land, the defendant could not work it and perform his contract." To which the plaintiff excepted.

The court further charged the jury as follows : " And if you believe that the only trespass committed, was by this passing and re-passing, and by the cattle of the defendant tramping the ground and eating grass while thus crossing the lot, then your verdict must be for the defendant ; and a breaking away from the line of travel and eating of grass by the cattle or horses of the defendant would not be a trespass for which an action could be maintained, if the defendant or his servants used ordinary care in driving them back and forth." To which the plaintiff excepted.

The court further charged the jury as follows : " Under the laws of this state cattle are not free commoners ; the owner of cattle is bound to take care of them, and he is liable for any damage they may do by going upon the lands of any other person. If you believe, from the evidence, that this was a public highway, then the public had a right of easement over it—that is, the public, including the defendant, had a right to travel over it, and drive their horses and cattle over it,

but for no other purpose. A person has no right to pasture his cattle upon the public highway except where it passes over his own land, and if he does, he is liable in damages to the owner of the land over which the highway passes. But if cattle occasionally bite off grass upon the sides of the road as they are being driven along the highway, the owner thereof is not liable for any damage they may commit while so doing. The owner of the land along the highway, is not obliged to fence against cattle running at large. Such person may own the title to the land over which the highway passes, subject only to the right of the public to pass over it. A by-law established by the electors of a town prescribing the time when cattle may run at large, cannot compel one person to furnish pasture for the cattle of another person, even though such pasture is the public highway." "If you believe that there was a legal highway along the west line of the lot wherein it is alleged that the trespass was committed, and that the cattle and horses of the defendant got into the lot from that highway, there being no fence on the east line or margin of the highway, then this action can be maintained." "A legal highway may be established in a number of ways. A road becomes a public highway when it is used as such, and has been heretofore laid out and established as such pursuant to law. Again, all roads not recorded which shall have been used as public highways twenty years or more, are legal highways. All roads not recorded which have been used ten years or more since the first of January, A. D. 1850, are deemed public highways. All highways laid out by the supervisors of any town and recorded, any portion of which has been opened and worked for the term of three years since the tenth day of March, 1857, are legal highways, so far as the same have been so opened and worked, notwithstanding the statute may not have been in all respects pursued, in laying out the same. It is claimed by the defendant that this road is about two miles long, running from the Madison road, to the Magno-

lia road, and that the south half has been relaid by the town officers. If the jury believe from the evidence that this track which is claimed to be a road, has been open to the public as a highway, and has been used and travelled by the public as such for the term of three years since the tenth of March, 1857, and during that time had work done upon it, under the direction of the pathmaster of the town, then at the end of such three years, it became a legal highway. A juror asked the court, "if there had been only one half days work done, any where on the line of the road, whether that would be sufficient work to make the road a legal highway the whole length of it;" to which the court answered, "that the law did not fix the amount of work necessary to be performed. If the jury believe from the evidence that the working and opening of the road was such as to show, that it was designed to make it a public highway prior to the trespass complained of, it would be sufficient, as the statute specifies no particular amount of work to be performed;" to which charge and every part thereof the plaintiff excepted. Verdict for the defendant, upon which judgment was entered in favor of the defendant, and the plaintiff appealed.

*Knowlton & Jackson*, for appellant:

1. No other defence was available in justification than that set up in the answer. *McKying vs. Bull*, 16 N. Y., 297; *Bush vs Prosser*, 1 Kern., 352; 2 id., 9.    2. The court erred in admitting the town records as to the alleged highway. 1. The road laid out or surveyed, does not start or follow the route named in the petition. 2. It does not appear that the proper notices were given for the meeting of the commissioners to act upon the petition, or when they did meet, or that they met at the designated place. 3. It does not appear that there was ever any appraisement of damages to land owners, or that any compensation was ever made for the land taken for the highway. 3. The ten years act, R. S., 1849, chap. 16, sec. 80, like the act of 1857, could only affect roads laid out and recorded

after that act took effect, and could not act retrospectively and divest a person of his title, for a highway without compensation; nor can this be done even as to highways 'laid out, recorded, opened, and travelled wholly after that act took effect.

*Bennett, Cassoday & Gibbs*, for the appellant, argued that the highway in question had been used. as a public highway for more than ten years since Jan. 1, 1850, and would be a legal highway without even being laid out or recorded. R. S., chap. 19, sec. 85. It was also a legal highway under the act of March 10, 1857. R. S., chap. 19, sec. 80. This act, is in its nature a statute of limitation. *State vs. Atwood*, 11 Wis., 422. The question whether the highway had been opened. and worked sufficiently since March 10th, 1857, to make it a legal highway, was a question of fact for the jury, like that of dedication.

*By the Court*, DIXON, C. J. The statute of 1849, chap. 16, sec. 80, continued under the present revision, chap. 19, sec. 85, that "roads not recorded, which shall hereafter be used ten years or more, shall be deemed public highways," is essentially a statute of limitation, under which the owner of land loses his right to compensation, if it has not been made, by acquiescence in the public use for the period prescribed. By his neglect to prosecute or assert his claim in some proper form, he admits that he has none, and the easement becomes effectual in the public. A sufficient time being given him for that purpose, it is no violation of the constitution. *Knox vs. Cleveland*, 13 Wis., 245.

The same is true of the act of March 10th, 1857, which declares that "all highways laid out by the supervisors of any town and recorded, any portion of which shall have been opened and worked for the term of three years, shall be deemed to be and are hereby declared to be legal highways so far as they have been so opened and worked, notwithstanding the

statutes may not have been in all respects pursued in laying out the same." Laws of 1857, chap. 19.

In order to establish the limitation under the latter act, the records of the highway in controversy were properly admitted; and it was not necessary for the defendant as matter of preliminary proof or otherwise, to show that the statute "had been in all respects pursued in laying out the same." He was not bound to show that the survey followed the precise route named in the petition; that the proper notices were given of the time and place for the meeting of the commissioners, to act upon the petition; or that they met pursuant thereto; nor that there was an appraisement of damages or compensation made to the land owners. The act, though prospective in its operation, 11 Wis., 422, applies as well to highways laid out and recorded and opened and worked, before its passage, as after, and these objections were waived and put at rest by the lapse of the time in which they could have been properly raised.

If the plaintiff desired to exclude the proof, that he had leased to the defendant the quarter section beyond the eighty upon which the trespasses were laid, and that there was no way of reaching the former, except by crossing the latter, for the reason that no such ground of justification was alleged in the answer, he should have objected to it when it was offered. Instead of that he allowed it to come in, in silence, and now the question not appearing to have been made below, seek to reverse the judgment upon exceptions to the instructions of the court, founded upon the evidence thus received. It is obvious that such a practice cannot be tolerated; that suitors are not to be snared in this way. Admitting the question might be raised upon the instructions, which we do not decide. Yet to be made, and to be available here, it should appear that it was distinctly made at the time the jury were charged.

These observations, we believe, dispose of the material points relied upon as error. The criticisms of counsel upon the lan-

guage of the instructions, as to the highway, might have deserved more serious consideration, if the questions had been made below by specific exceptions, or by more accurate instructions asked and refused. As the instructions are not altogether erroneous, and the exception is general to the charge and every part thereof, no advantage can now be taken of it. It was proper for the judge under the statutes above referred to, notwithstanding the informalities which may have intervened in the laying out of the highway, to submit the question of its legality to the jury, on the record and the evidence before them as to its having been opened and worked. And the answer to the question put by the juror, must be taken as modified by the previous instructions, which, if not entirely accurate, would undoubtedly have been made so upon specific objection by counsel.

Judgment affirmed.